Fremont-Smith, J.
At about 4:00 a.m. on March 1, 1990, in the Roxbury section of Boston, a police officer observed a 1985 Cadillac with something hanging from its rearview mirror on the front windshield, which could have obstructed the driver’s view in violation of Chapter 90, §13. He also recognized the driver of the automobile, Dwayne Owens, as an individual whom the officer had observed, on a prior occasion, with another individual, pull guns on two other persons, one of whom was shot by Owens’ then-companion (Harding). During that prior incident, Harding had also shot at the testifying police officer.
Owens’ vehicle (in which the defendant, on March 1, was a passenger) was then pulled over by the officer and, on request, Owens provided the officer with a valid license and registration, and defendant provided the officer with his name and date of birth. The officer then handed Owens a written motor vehicle citation for violation of Chapter 90, §13 and told the occupants to step out of the vehicle, where they were both pat-frisked (no weapons being found). The officer then returned to his cruiser, and ascertained by way of computer that there was an outstanding warrant at the Taunton Police Station for the arrest of the defendant. He then radioed the Taunton police, who confirmed that they held a warrant for defendant’s arrest for unarmed robbery and assault and battery. The officer then placed Essex under arrest and proceeded to perform a more thorough search of his person, including his groin area, where he discovered what appeared to be cocaine.
Defendant challenges the legality of the stop of the driver and subsequent detention and search of defendant.
A police officer may properly stop a vehicle for a motor vehicle violation, and where, as here, the officer has an independent reasonable apprehension that one or more of the occupants may be armed and dangerous, may pat-frisk the occupants to ascertain the presence of any weapons. See Commonwealth v. Puleio, 6 Mass.App.Ct. 822, 909 (1978), and Commonwealth v. Santana, 420 Mass. 205 (1995). As stated in Commonwealth v. Johnson, 413 Mass. 598, 600 (1992), “if the stop was j ustified, the officers could take reasonable precautions for their own protection.”
Pursuant to the stop, the officer was also then entitled, in the circumstances,[1] to follow normal police procedures, which, he testified, entailed a further brief (ten minute) detention of the automobile and its occupants to ascertain whether either of the occupants was wanted on any outstanding arrest warrants. On being provided by the Taunton Police with reasonable grounds to believe that the defendant was wanted for outstanding warrants, the officer had reasonable cause to arrest the defendant.
The Court concludes, however, that when the police officer then made a further, more thorough search of defendant at the scene, incident to defendant’s arrest, the Court is constrained by G.L.c. 276, §1 to suppress the drugs found in defendant’s groin area as a result of that search. G.L.c. 276, §1 limits the admissibility of evidence resulting from a search incident to an arrest to “other evidence of the crime for which the arrest has been •made” unless a warrantless search was independently justified. Since the arrest was based entirely upon outstanding warrants for unarmed robbery and for assault and battery, the drugs which were discovered were clearly unrelated to the arrestable crimes. See Commonwealth v. Tool 389 Mass. 159 (1983) (upholding suppression of contraband found during search incident to arrest on an outstanding warrant for assault and battery). Nor can the subsequent search of defendant be justified as a weapons search, since the officer admitted that his apprehension of danger from concealed weapons had already been addressed by the earlier pat-frisks of the driver and of defendant, and that he was no longer in any apprehension for his safety. Norwasita“custodial search,” which is normally conducted at the police station and not at the place of arrest (see cases cited in Stearns, “District Court Prosecutors Guide,” pp. 125-26), as there was no testimony here of any normal police procedure to conduct a custodial search at the time and place of arrest. The Court, therefore, is constrained to conclude that the additional search was justified only as a search incident to defendant’s anrest, pursuant to which the discovery of the unrelated drugs must, under c. 276, §1, be suppressed.[2]
ORDER
Accordingly, defendant’s Motion to Suppress is allowed.

The circumstances, as noted above, included not only the observed motor vehicle violation but also the officer’s knowledge of defendant as having been a dangerous, armed indi *518 vidual.

Although the result may appear to impose an unreasonable restriction on a police officer’s ability to investigate for contraband and on the Commonwealth’s ability to prosecute criminal conduct on discovery thereof, if the Court’s interpretation of c. 276, §1 is correct, the result appears to be mandated by the facts of this case and the only remedy would appear to be with the legislature. (See legislative history of c. 276, §1 set forth in Commonwealth v. Tool, supra. at 161.)